IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE D. BOND,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 25-5685 |
| ROBERT P. CASEY, *et al.*,<br>    Defendants. | :<br>:<br>: |

MEMORANDUM

**Marston, J.**                                                                                                                                                   **January 6, 2026**

      Plaintiff Jesse D. Bond, a prisoner currently incarcerated at SCI Phoenix, initiated this pro se civil action alleging that he was wrongfully kept on death row for nineteen years. Bond seeks to proceed *in forma pauperis*. Named as Defendants are: former Pennsylvania Governors, Robert P. Casey, Thomas Ridge, and Tom Corbett; Governor Josh Shapiro; the Pennsylvania Department of Corrections ("DOC"); Martin F. Horne, identified in the Complaint as the former DOC Commissioner; Jeffrey A. Beard, identified as the former DOC Secretary; Lynne Abraham, identified as the former Philadelphia District Attorney; and James S. Bruno, Esquire. (Doc. No. 2 ("Compl.") at 3, 5–7.) For the following reasons, the Court will grant Bond's motion to proceed *in forma pauperis* and dismiss his Complaint with prejudice for failure to state a claim and as time barred.

**I.    FACTUAL & PROCEDURAL BACKGROUND**[1]

      Public dockets reflect that Bond was charged and convicted in multiple criminal proceedings in the Philadelphia County Court of Common Pleas in the 1990s. *See*

---

[1] The factual allegations set forth in this Memorandum are taken from the Complaint and publicly available records of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a

*Commonwealth v. Bond*, CP-51-CR-0117921-1992, CP-51-CR-0117991-1992, CP-51-CR-2217781-1992 (Phila. Cnty. Ct. Com. Pl.). Over a two-week period in 1991, Bond and his co-defendants committed three separate robberies of small fast-food establishments. *See Bond v. Beard*, No. 02-8592, 2006 WL 1117862, at *1 (E.D. Pa. Apr. 24, 2006), *aff'd*, 539 F.3d 256 (3d Cir. 2008). In each robbery, Bond shot a victim. (*Id.*) Two of the victims died, and the third was badly wounded. (*Id.*) Bond was tried separately for each robbery. (*Id.*)

In his first trial, Bond was convicted of second-degree murder and sentenced to life imprisonment.[2] *See Bond*, CP-51-CR-0117991-1992. In his second trial, Bond was convicted of first-degree murder and sentenced to death following a penalty hearing.[3] *See Bond*, CP-51-CR-2217781-1992. Bond was sentenced for these convictions on July 28, 1993, by the Honorable David N. Savitt. *See Bond*, CP-51-CR-0117991-1992, CP-51-CR-2217781-1992. In his third trial, Bond was convicted of aggravated assault, robbery, and related crimes and sentenced on June 6, 1994, to a lengthy term of imprisonment. *See Bond*, CP-51-CR-0117921-1992.

In each of his three cases, Bond sought habeas corpus relief in this Court. *See Bond v. Blaine*, Civ. A. No. 01-2624; *Bond v. Beard*, Civ. A. No. 02-8592; and *Bond v. Stickman*, Civ. A. No. 02-9132. On April 25, 2006, the Honorable John P. Fullam, Sr. dismissed with prejudice as untimely Bond's habeas petitions in Civ. A. No. 01-2624 (*see* Doc. No. 38 relating to Bond's

---

pleading has stated a claim). The Court adopts the pagination supplied by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

[2] Bond was also convicted of robbery, possession of an instrument of crime, and criminal conspiracy. See *Bond*, CP-51-CR-0117991-1992. In addition to the life sentence, Bond was sentenced to five to ten years for criminal conspiracy and two and one-half to five years for possession of an instrument of crime. *Id.*

[3] Bond was also convicted of robbery, possession of an instrument of crime, and criminal conspiracy. See *Bond*, CP-51-CR-2217781-1992. In addition to the death sentence, Bond was sentenced to ten to twenty years for robbery, two and one-half to five years for possession of an instrument of crime, and five to ten years for criminal conspiracy. *Id.*

first criminal trial, *Bond*, CP-51-CR-0117991-1992) and Civ. A. No. 02-9132 (*see* Doc. No. 12 relating to Bond's third criminal trial, *Bond*, CP-51-CR-0117921-1992). With respect to Civ. A. No. 02-8592, the death penalty case, Bond exhausted his state court remedies before filing his federal habeas corpus petition on November 22, 2002. *See Bond*, 2006 WL 1117862, at *1. By Memorandum and Order dated April 24, 2006, Judge Fullam rejected Bond's challenges to his conviction, *id.* at *2–7, but granted the habeas petition as to Bond's death sentence after determining that Bond had received ineffective assistance of counsel at the penalty hearing, *id.* at *7–10. Bond's sentence was vacated, and the case was remanded to the state court for further proceedings. *Id.* at *10. On August 20, 2008, following cross-appeals by Bond and the Commonwealth, the United States Court of Appeals for the Third Circuit affirmed. *See Bond v. Beard*, 539 F.3d 256, 262 (3d Cir. 2008). Petitions for writ of certiorari to the United States Supreme Court were denied on October 5, 2009. *See Beard v. Bond*, 558 U.S. 835 (2009), 558 U.S. 932 (2009). Although Bond asserts that he was removed from death row on November 12, 2012 (*see* Compl. at 8), the state court dockets indicate that on November 15, 2012, Bond was resentenced to a term of life imprisonment without parole for first degree murder, ten to twenty years for robbery, two and one-half to five years for possession of an instrument of crime, and five to ten years for criminal conspiracy. *See Bond*, CP-51-CR-2217781-1992.

In the instant action, Bond claims that he "was wrongfully kept on death row" for more than nineteen years. (Compl. at 4, 8, 12–13.) He alleges that he was placed on death row in February 1993 and was removed on November 12, 2012 "pursuant to an Order issued by the 3rd Circuit Court of Appeals." (*Id.* at 8.) Bond contends that "it was constitutionally impermissible" for him to be placed on death row because his unrelated homicide convictions "fell in a manner that precluded [him] from being kept on death row." (*Id.* at 4, 8.) He asserts that because he was

3

first convicted of second-degree murder and sentenced to life in prison, he should not have been subjected to punishment by death for his subsequent conviction of first-degree murder. (*Id.* at 4, 8–10.) Bond maintains that for the "Commonwealth to inflict the punishments entailed by the 1st degree case [*i.e.*, the death row case], the governor . . . would have to first pardon the 2nd degree life conviction, or commute its sentence." (*Id.* at 9.)

Bond alleges that he was "under the belief that [Governor] Casey had performed the required pardon." (*Id.* at 11.) He claims that on March 28, 2024, he became aware that "Casey did not pardon the 2nd degree conviction or commute its accompanied sentence" and because of this, his time "spent on death row, from 1993 until November 15, 2012, was illegal." (*Id.*) On March 28, 2024, Bond allegedly received a prison file "titled 'DC16E – Sentence Status Summary'" (*see id.* at 29) from a counselor at SCI Phoenix "showing that the required pardoning of the 2nd degree conviction had not been done, nor had its accompanied sentence been commuted" prior to Bond's placement on death row. (*Id.* at 11.) Bond contends that several Defendants, including the DOC, "switched [his] convictions . . . putting the death row case in the front so that they could place and keep [him] in death row in an attempt to cause his execution." (*Id.* at 12.) He claims that he should have spent the "19 plus years out in the general prison population, not in prolonged solitary confinement." (*Id.*)

Bond asserts constitutional claims under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights, and for conspiracy to violate his rights. (*Id.* at 3, 16–18, 20–21.) He also asserts claims for disability discrimination under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") as well as state law claims for intentional infliction of emotional distress. (*Id.* at 3, 15–16, 19.) He seeks monetary damages. (*Id.* at 22.)

## II.  STANDARD OF REVIEW

The Court grants Bond leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the pro se Complaint as true, draw all reasonable inferences in Bond's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Because Bond is proceeding pro se, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

## III.  DISCUSSION

The Court finds that Bond's Complaint both fails to assert a claim upon which relief can be granted, and even if the Court were to find it stated a claim, must alternatively be dismissed as time barred.  The Court understands Bond to assert claims based on his death row confinement from February 1993 through November 2012.  (*See generally* Compl.)  The core of Bond's Complaint is that his time on death row was unlawful because to be on death row the Governor of Pennsylvania "would have to first pardon . . . or commute" his other, prior adjudicated,

---

[4] However, as Bond is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

second-degree murder conviction. (*Id.* at 9.) Although the Court must accept as true the allegations in the Complaint at this stage of a case, the Court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "Without more, such assertions are merely 'bald assertions' and 'legal conclusions' without any factual support." *Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21-cv-19072, 2022 WL 3913318, at *5 (D.N.J. Aug. 31, 2022) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). The Court has found—and Bond has cited to—no support for his contention that a necessary predicate of being on death row in the Commonwealth of Pennsylvania is the pardon or commutation of a prior conviction which did not result in a death sentence. Thus, the Complaint will be dismissed for failure to state a claim.

And even if Bond's Complaint could state a claim based on this theory, which it does not, his claims would still be barred because they were filed long beyond the relevant statute of limitations. Because the events in this matter occurred in Pennsylvania, all of Bond's federal claims are subject to a two-year statute of limitations. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (the timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose); *accord Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("The statute of limitations applicable to § 1983 claims in Pennsylvania is two years."); *Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 208 (3d Cir. 2008) (applying the Pennsylvania personal injury statute of limitations for two years to ADA and RA claims). The tort claims asserted by Bond are also subject to a two-year statute of limitations, as are his claims of conspiracy. *See* 42 Pa. Cons. Stat. § 5524; *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 287 n.1 (Pa.

Super. Ct. 1997) (the statute of limitations for conspiracy is the same as that for the underlying action which forms the basis of the conspiracy).

A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). "[T]he limitations period starts to run at this time even if the full extent or severity of the injury is not yet known." *Alexis v. Connors*, No. 23-2502, 2024 WL 3534480, at *2 (3d Cir. July 25, 2024) (citing *Kach*, 589 F.3d at 634–35; *Wallace*, 549 U.S. at 391). Further, "the clock begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246–47 (Pa. 2021) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). "If the plaintiff fails to file before the clock expires, the statute of limitations bars the suit." *Id.*

Although the discovery rule may toll the running of the limitations period, it applies only "when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572–73 (Pa. Super. 2007) (citations and emphasis omitted). As the Pennsylvania Superior Court has further explained:

> The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The statute begins to run in such instances when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress. The party

7

> seeking to invoke the discovery rule bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence.

*Commc'ns Network Int'l, Ltd. v. Mullineaux*, 187 A.3d 951, 961 (Pa. Super. Ct. 2018) (emphasis omitted).  Pennsylvania's formulation of the discovery rule "t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause."  *Rice*, 255 A.3d at 247 (quoting *Wilson v. El-Daief*, 964 A.2d 354, 364 (Pa. 2009)).

Recognizing the two-year statute of limitations applicable to his claims, Bond contends that he filed this action within two years of finding out that his confinement on death row "from February, 1993, until November, 2012, was unlawful and in violation of state and federal law." (Compl. at 3–4, 11–12 (stating Bond purported to learn of his claims on March 28, 2024).)  But Bond should have known of his allegedly unlawful time on death row as far back as its inception, once his sentence was vacated in 2006, or—at minimum—in 2012.

*First*, as Bond's Complaint makes clear, he alleges that his time on death row was unlawful from the outset because he never received a pardon for his second-degree murder conviction which came before the death sentence for his first-degree murder conviction.  (*See generally* Compl.)  If that allegation is true, it would necessarily mean that Bond's claims here would begin to accrue the moment he began his time on death row.  As Bond's time on death row began over 20 years ago, his Complaint is untimely.

*Second*, Bond's death sentence was vacated on April 24, 2006.  *See Bond*, 2006 WL 1117862, at *10.  Bond therefore knew or should have known of the impropriety of his confinement on death row since at least that date.  *See Sameric Corp.*, 142 F.3d at 599 (holding

statute of limitations begins when plaintiff "knew or ***should have known*** of the injury upon which [his] action is based."). Bond, having filed multiple habeas petitions challenging his convictions and confinement, and eventually succeeding in one of his habeas cases, should have inquired the alleged lack of a pardon once his death sentence was vacated. He failed to do so.

*Third*, Bond's Complaint and 2012 legal filings show that he did—or at minimum, should have—known of what he alleges was an improper confinement due to the lack of a pardon in 2012. The DC16E report Bond allegedly received in 2024 is dated November 28, 2012, at 10:12:59 AM. (Compl. at 29.) While Bond alleges he was only made aware of this report in 2024, he provides no explanation for why he failed to inquire about it prior to that date. *Cf. Basemore v. Vihlidal*, 605 F. App'x 105, 109 (3d Cir. 2015) (prisoner's claims based on his Z-Code status were untimely because said status was removed more than two years prior to filing complaint). And on October 19, 2012, Bond filed a motion in his capital habeas case seeking monetary sanctions because he was still confined on death row. *See Bond*, Civ. A. No. 02-8592, Doc. No. 81. In his motion, Bond recognized that because "the Federal Court . . . vacated [his] sentence of death," his "continuing confinement . . . on death row, or in solitary confinement, cannot be justified." *Id.* at 2. He further asserted that his "continued confinement in solitary confinement and death row [was] unconstitutional." *Id.* Bond's October 2012 motion belies his argument that he was not, or could not have been, made aware of the alleged unlawfulness of his death sentence due to the lack of a pardon. *Cf. Clark v. Coupe,* 55 F.4th 167, 175 n.5 (3d Cir. 2022) (claims regarding Clark's stays in the Special Housing Unit prior to January 23, 2015—more than two years before he filed his complaint in District Court—are barred by the statute of limitations). Thus, at various points from 1993 until 2012, Bond did or should have known about his alleged claims and therefore, the discovery rule does not apply.

For similar reasons, Bond is not entitled to tolling of the statute of limitations under general equity principles. "Tolling is [an] extraordinary remedy, and is proper only when the principles of equity would make [the] rigid application [of a limitation period] unfair." *D.J.S.-W ex rel. Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (alterations in original) (internal citations and quotations omitted). Equitable tolling is generally appropriate where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff in some extraordinary way has been prevented from asserting a claim; or (3) a plaintiff has timely asserted his claims but in the wrong forum. *See id.* None of these elements are applicable here.

In sum, Bond did not file his Complaint until October 1, 2025, nearly thirteen years after he was removed from and more than 20 years since he was first placed on death row. Bond's claims based on the time he spent on death row in solitary confinement from February 1993 to November 15, 2012, are thus time barred. "Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013); *see also Harris v. Stash*, No. 22-1910, 2023 WL 1990531, at *2 (3d Cir. Feb. 14, 2023) ("[A] court may dismiss claims *sua sponte* if a time-bar is obvious from the face of the complaint and no further development of the record is necessary."), *cert. denied*, 144 S. Ct. 579 (2024). Because it is apparent from the face of the Complaint, when read in conjunction with public records, that Bond's claims are time barred, his claims may be dismissed with prejudice on this basis.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Bond leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Bond's claims based on the time he spent on death row in solitary confinement from February 1993 to November 15, 2012, are dismissed with prejudice due to their failure to state a claim and because they are time barred.  Leave to amend will not be given because the Court concludes that amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002).  A separate Order follows that dismisses this case.  *See* Fed. R. Civ. P. 58(a).